**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.                                           NO. 4:08CR00138-01 JLH

ANTONIO YANCY                                                                             DEFENDANT

**OPINION AND ORDER**

Antonio Yancy has been indicted on charges of possessing a firearm after having previously been convicted of three felony offenses in violation of 18 U.S.C. §§ 922(g)(1) and (924)(e). He was found in possession of a firearm during a traffic stop on May 26, 2007. He has filed a motion to suppress in which he argues that there was no probable cause for the traffic stop or the subsequent search. The Court conducted an evidentiary hearing and has received briefs from both Yancy and the government following the evidentiary hearing.

Yancy was a passenger in a vehicle driven by Michael Purdom when that vehicle was stopped by North Little Rock police officer Brian Sipes shortly after 1:00 a.m. on May 26, 2007. Officer Sipes testified that as he was traveling along East Broadway in North Little Rock he saw a white Ford pickup truck impeding traffic in the northbound lane of Glenview Street just north of East Broadway. The pickup truck turned west on Poe Street, and Sipes made the stop near the intersection of Poe and Rogers. According to Sipes, he approached the driver's side of the pickup truck. Purdom was in the driver's seat; Yancy was sitting next to the passenger side door; and a female sat between them. Sipes testified that Yancy was nervous and fidgety and would not leave his hands where they could be seen, so he went around to the passenger side and asked Yancy to step out. When he opened the passenger side door, he saw a pistol in plain view to the right of the

passenger seat and slightly behind it. After seeing the pistol, he searched Yancy and found a bullet in his right pocket that matched the bullets in the pistol.

Purdom testified that he was going to Riverfest, which is an annual event held on Memorial Day weekend at the Riverfront Park in Little Rock. He had seen Yancy in the neighborhood and "knew of him" but was not really acquainted with him. According to Purdom, as he was headed toward Riverfest, Yancy and the female with him flagged him down on Glenview. He turned off of Glenview into the parking lot of the church located at the corner of Glenview and East Broadway, made a u-turn in the parking lot, and then stopped before exiting the parking lot to allow Yancy and the female to get into his pickup truck. According to him, he was not in the street, there was no one behind him, and he was not impeding traffic. He then exited the church parking lot and drove west along Poe before being stopped by Officer Sipes. He testified that Officer Sipes got him out of the vehicle first and told him that he was hanging around with the wrong people, or something of that sort. He says that he told Officer Sipes that he had not impeded traffic, but Officer Sipes told him to be quiet or he would charge him with the gun. He received a citation and sent in money to pay it rather than contesting it.

Any traffic violation, even a minor one, gives an officer probable cause to stop the violator. *United States v. Lyton*, 161 F.3d 1168, 1170 (8th Cir. 1998). Driving in such a manner as to impede traffic is a violation of Ark. Code Ann. § 27-51-208. Yancy has not argued that even if Purdom's vehicle was stopped in the street with a vehicle behind it that conduct would not constitute a traffic violation. Hence, the issue is whether Purdom stopped on Glenview Street and impeded traffic, and that issue, in turn, depends on whether the Court should believe the testimony of Sipes or the testimony of Purdom.

2

Purdom's testimony is improbable for several reasons. First, he testified that he was headed toward Riverfest, but it is undisputed that the traffic stop occurred shortly after 1:00 a.m. Sipes testified without contradiction that Riverfest closed at approximately 10:30 p.m. It is improbable that Purdom would have been going to Riverfest at 1:00 a.m.

Secondly, Purdom testified that he did not know Yancy but only "knew of him" by seeing him on occasion at a neighborhood convenience store. Yet Purdom stopped at 1:00 a.m. to pick up Yancy when Yancy and a female – whom Purdom guessed was Yancy's girlfriend or friend – waved at Purdom when he was driving by. It is improbable that Purdom would stop at 1:00 a.m. to pick up someone on the side of the road without knowing that person well.

Third, Purdom testified that he had no conversation with his passengers before he got stopped, but again that testimony is improbable. One would expect that, if a driver picked up two passengers on the side of the road merely because they waved him down, some conversation would ensue at least to determine where the passengers needed to go, particularly if these new passengers were people that the driver hardly knew and particularly if they had flagged him down at 1:00 a.m.

Fourth, Purdom testified that he was staying that weekend at his grandmother's house on Davis Street, which is north of East Broadway. If he was traveling from his grandmother's house to Riverfest, which is how the Court understood his testimony, he would have been traveling south on Glenview and would have been within a block of East Broadway, the main thoroughfare from that neighborhood toward Little Rock, when he stopped to pick up Yancy and the female. If so, there is no apparent reason why, after picking up the passengers, he did not continue on Glenview toward Broadway, which was only one block from where he stopped, and then turn west on Broadway. Instead, the undisputed evidence establishes that he went west on Poe Street, which is a side street and not a main thoroughfare. While it is possible that he could have been headed toward Riverfest

3

and taken that route, it seems unlikely; and while he might have gone that way to deliver them to their destination, he testified that there was no conversation between them.

Fifth, defendant's Exhibit 1 shows that the entrance to the church parking lot where Purdom says that he entered and turned around before picking up Yancy and the female is barred by a gate. The photograph was taken some 18 months after the incident and in broad daylight, but from the photograph it does not appear that the gate is new. There was no testimony that the gate was installed after the incident in question. If the gate was closed in broad daylight, as shown in defendant's Exhibit 1, it seems likely that it was closed at 1:00 a.m. on a weekend. If so, Purdom could not have pulled into the parking lot and made a u-turn as he testified that he did.

On the other hand, Officer Sipes's testimony is consistent with all of these facts. On his testimony, Purdom stopped on Glenview as he was traveling north away from Broadway toward Poe, and after stopping he turned left on Poe. That testimony is consistent with defendant's Exhibit 1 showing the gate across the entrance to the parking lot. It is also consistent with the fact that Purdom turned left on Poe rather than proceeding south on Glenview and turning right on Broadway. Furthermore, it is undisputed that Sipes issued a citation to Purdom for impeding traffic, and Purdom did not contest the citation but instead sent in money to pay it.

The Court finds from a preponderance of the evidence that Purdom stopped on Glenview to pick up Yancy and the female and impeded traffic. Hence, a traffic violation, even though a minor one, occurred, and that traffic violation gave Sipes probable cause to stop Purdom's vehicle. *Lyton*, 161 F.3d at 1170.

The Court also finds from Sipes's testimony that when he was standing at the driver's side of the truck, Yancy was nervous, fidgeting, and would not keep his hands in plain view. Sipes was acquainted with Yancy and knew that he had a criminal history. Hence, he had reasonable cause to

ask Yancy to stand outside the vehicle where he could be observed. When Sipes opened the pickup truck to ask Yancy to step outside, he saw the pistol in plain view. Seeing the pistol in plain view gave Sipes probable cause to search Yancy. When he searched Yancy he found the bullet.

Based on these findings of fact, the Court does not agree that Yancy's Fourth Amendment right to be free from an unreasonable search and seizure was violated.

## CONCLUSION

For the reasons stated above, defendant's motion to suppress and his motion to dismiss are DENIED. Documents #22 and #31.

IT IS SO ORDERED this 13th day of February, 2009.

*J. Leon Holmes*

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE